**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 21 CR 286 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| JEFFERY NALL | ) | |
| | ) | |
| | ) | |

**<u>MEMORANDUM OPINION & ORDER</u>**

On February 26, 2026, the Court held a hearing over Defendant Jeffery Nall's Motion to Quash Arrest and Suppress Evidence. (Dkts. 124, 143). For the reasons stated on the record, the Court orally denied Nall's motion. (Dkt. 143). Nall seeks clarification whether the Court's February 26, 2026, oral ruling addressed: (1) whether the Government had the right to seize Nall's phone during the March 2019 stop; (2) whether the Government had the right to search the contents of Nall's phone; and (3) whether the delay between the Government's seizure of Nall's phone and the securing of a search warrant was reasonable. If not, Nall seeks to suppress this evidence for the reasons he claims he stated in his motion and during the parties' pretrial conference. (Dkts. 124, 143, 170, 175). The Court finds that the seizure and search issues were raised, argued, and ruled on during the hearing; but Nall never raised the issue of delay in his motion. The Court therefore clarifies and affirms its oral ruling and denies Nall's oral motion to suppress.

During the pretrial conference, the parties also disputed the admissibility of uncharged firearm components and ammunition that the Government seeks to introduce. (Dkt. 175). The parties briefed this issue in motions *in limine* and presented oral argument over it. (*Id.*); (Dkts. 152, 158). For the reasons below, the Court denies the Government's motion *in limine* seeking to introduce this evidence. (Dkt. 152 at 22, § VII.C).

1

## I. Phone

### a. Seizure and search

In Nall's motion, he sought "to suppress any evidence obtained during his arrest on March 18th, 2019, or any evidence derived therefrom." (Dkt. 124 at 1). Nall asserted that the "Police did not have probable cause to seize [his] phone on March 18, 2019," as evidenced by the "fact that [he] has not been charged with any crime in relation to his March 2019 arrest[.]" (*Id.* at 7). Nall also challenged the predicate for the stop—the postal package filled with drugs—by claiming that, because the "agents never tested the contents of the package, police never had justification to stop Mr. Nall's vehicle." (*Id.*); (*see also id*. at 6) (describing background of the March 18, 2019, search). Further attacking whether probable cause existed, Nall argued that the "agents never witnessed Mr. Nall touch or move the package that *potentially* contained narcotics" and so there was no reason to believe that Mr. Nall had obtained narcotics from the package"; he also noted that "subsequent forensic analysis did not locate [his] fingerprints or DNA on any of the items recovered from the BMW on 3/18/2019." (*Id.*) Taking all this together, the "evidence obtained as a result of the unlawful search of [his] BMW, including the directions to Cube Smart, constitute fruit of the poisonous tree, and are subject to exclusion," Nall concluded. (*Id.*)

The Court denied Nall's motion in full during the hearing. (Dkt. 143). The Court's ruling, relying on the inevitable discovery doctrine, explicitly covered the March 2019 stop—holding that the evidence from the phone from that stop "would have been inevitable as well." (*Id.* at 8:7-12); (*see also id.* at 2:16-8:12). This ruling was explicit in response to the Government's question "as to the motion to suppress the Nall phone evidence that was seized in March [2019]." (*Id.*)[1] Nall did not object or raise any counterargument in response to the Court's ruling on this point or the

---

[1] The transcript states 2020 but there are no 2020 dates relevant here so the Court understands the Government to have intended to say 2019.

Government's question. (*Id.*); (*see also id.* at 8:16). For these reasons, Nall's motion remains denied in full—including all of Nall's arguments concerning the March 18, 2019, stop, seizure, and search of Nall's phone. (Dkt. 124 at 6-7). The evidence found in Nall's cube does not constitute fruit of the poisonous tree and is not subject to exclusion. (*Id.*)

Nall failed to challenge the Government's delay in securing a warrant in his motion. (*See* Dkt. 124). Indeed, he failed to raise the issue entirely. (*Id.*) Instead, Nall couched his position on lack of probable cause to arrest. (*Id.* at 7) ("Police did not have probable cause to seize Mr. Nall's phone on March 18, 2019."). Because Nall never raised it in his motion the Court never addressed it in the February 26, 2026, hearing. (Dkts. 124, 143).

### b. Delay

The Court denies Nall's request for clarification over whether the delay—between the Government's seizure of the phone until the Government secured a warrant—was reasonable because he failed to raise this issue in his motion. (Dkt. 124). The Court instead interprets Nall's request as an oral motion to quash or suppress.

The Government seized Nall's phone on March 18, 2019. (Dkt. 124 at 7); (Dkt. 129 at 14-15). Twenty days later, on April 8, 2026, Judge Schenkier executed a search warrant for the seized phone. (Dkt. 129-9 at 2). Nall's primary contention for suppression is not delay but that the Government lacked probable cause to seize the phone. (Dkt. 175 at 14:1-20:11) (*see also id.* at 19:16-18) ("There's no issue of spoliation here, it's a question of whether or not the government had even the right to take it in the first place."). Nall claims that, at the time of the March 18, 2019, arrest, the Government had no warrant or probable cause, and so it was not permitted to possess his phone for 20 days. (*Id.* at 14:6-16).

The Government's position is that the delay was reasonable. (*Id.* at 15:4-19:4). It points out that the "Seventh Circuit does not have a bright-line test" for how long before the Government must seek a search warrant of a device. (*Id.* at 15:14-17). The Government noted that, based on an ongoing investigation, Nall was stopped following his activity at a suspected drug spot, searched after a positive canine hit, and arrested upon the discovery of a firearm and large quantities of drugs. (*Id.* at 16:2-15). After the seizure, the Government claims diligence. It notes that "there were multiple law enforcement steps being taken." (*Id.* at 17:20-18:3). The Government notes, for example, that it began promptly working on the criminal complaint and, by March 26, the lead investigator drafted a warrant for the phone and began soliciting comments. (*Id.* at 18:3-11). The Government relies on *United States v. Jackson*, 132 F.4th 1019 (7th Cir. 2025) where the court found a 40-day delay reasonable, especially because (there, like here) the phone "was in law enforcement's possession." (*Id.* at 18:12-22). Lastly, the Government highlights that Judge Schenkier "had no issue with [the] timing in approving the warrant." (*Id.* at 18:22-19:4).

"The Fourth Amendment provides that every search, whether or not authorized by a warrant, must be 'reasonable.'" *United States v. Jackson*, 132 F.4th 1019, 1020 (7th Cir. 2025). "[D]elay can make a search unreasonable." *Id.* (citing *United States v. Prideaux-Wentz*, 543 F.3d 954, 957-59 (7th Cir. 2008)); *United States v. Mitten*, 592 F.3d 767, 775 (7th Cir. 2010); *Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004)). "There is unfortunately no bright line past which a delay becomes unreasonable. Instead, the Supreme Court has dictated that courts must assess the reasonableness of a seizure by weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

4

"On the individual person's side of this balance, the critical question relates to any possessory interest in the seized object, not to privacy or liberty interests. A seizure affects only the person's possessory interests; a search affects a person's privacy interests." *Id.* (quotes omitted). "In addition, it can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it—perhaps by checking on the status of the seizure or looking for assurances that the item would be returned." *Id.* On the Government's side, "a key factor . . . is the strength of the state's basis for the seizure. The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion." *Id.* "All else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures." *Id.* Balancing "these competing interests [the Court] must take into account whether the police diligently pursued their investigation. . . . When police act with diligence, courts can have greater confidence that the police interest is legitimate and that the intrusion is no greater than reasonably necessary." *Id.* (cleaned up). "When police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." *Id.*

Nall offers no support for his oral motion other than noting the general length of time. *Supra* at 3-4. He presented no evidence how the seizure impacted his possessory interest in phone—or if he asked for it back. *Id*. To be sure, contrary to the Government's point, this case is not identical to *Jackson* because the defendant there "did not have a right to keep the cell phone in his possession during custody"; whereas Nall was released after his March 18, 2019, arrest. *See United States v. Jackson*, 132 F.4th 1019, 1021 (7th Cir. 2025). Still, Nall presented no evidence, law, or support for his position apart from noting the length of time. *Supra* at 3-4. Nor did Nall assert that the delay caused spoliation. *Id.*; (*see also* Dkt. 175 at 19:16-18).

The Government's basis for the seizure is strong. Nall used his phone for drug trafficking. (*See* Dkt. 129 at 28-29). From missed calls from accomplices, to addresses leading to drug caches, Nall's phone was a facilitating tool in the drug operation. (*Id.*) The Government seized Nall's phone—not after a one-off fortuitous traffic stop—but months of federal investigation. (*Id.* at 28-31). Federal authorities investigated, tracked, and surveilled Nall for months to build their case against him. (*Id.* at 18-35). When the Government arrested Nall and seized his phone, he possessed a firearm and significant narcotics. (*Id.*) The Government's actions show diligence, not delay. It took time to seek input for the warrant; the warrant itself is a lengthy and detailed account spanning 34 pages. (Dkt. 129-9). That alone must have taken several days to draft; and of course, the search of electronic devices involve technological hurdles—far from merely opening a suitcase, searching an iPhone requires even more preparation, planning, and execution. (*See, e.g.*, *id.* at 25-36).

Considering all these factors, the Court finds the delay reasonable. The Court denies Nall's oral motion to suppress the evidence from his phone on account of the 20 day-delay between the Government's seizure of Nall's phone and Judge Schenkier's execution of the search warrant. *See Burgard*, 675 F.3d at 1034.

## II.    Firearm Components and Ammunition

The Court turns to the Government's motion *in limine* concerning "Additional Firearm Components and Ammunition." (Dkt. 152 at 22, § VII.C). The Government seized "a Glock conversion part designed to convert a weapon into a machine gun," "a black silencer," and "a black Glock slide intended for use in assembling and fabricating a firearm silencer." (*Id.*) It asserts that "[t]his evidence is admissible as direct evidence of defendant's possession of the Firearm in furtherance of a drug trafficking crime as charged in Count 4." (*Id.*) It further claims that "[t]he additional ammunition and gun components are evidence that defendant knowingly possessed the

6

Firearm . . . in furtherance of a drug trafficking crime[.]" (*Id.*) (citing *United States v. Willoughby*, 27 F.3d 263, 265 (7th Cir. 1994)).

To Nall, none of this is admissible. He notes that he was "not charged with unlawfully possessing any of these items" and asserts that merely because "these items were found in the Cube does not make it more or less likely that [he] possessed the *firearm* because the firearm itself was found in the Cube." (Dkt. 158 at 11). There is therefore "no need for additional evidence connecting up the Cube and the firearm," Nall posits. (*Id.* at 11-12). He maintains that these items are "unnecessarily cumulative under FRE 403" and "not relevant under FRE 401." (*Id.* at 12). Nall also challenges the Government's reliance on *Willoughby*, deeming it misplaced because *Willoughby* does not "state that the presence of firearm *accessories* are evidence of intent that can support a 924(c) charge." (*Id.*)

At oral argument, the Government elaborated that "the ammunition and some of the components which are compatible with the charged firearm are connected to [Nall's] use of the firearm and his ability to use it to protect his drug stash." (Dkt. 175 at 32:2-5). While the Government conceded that "the firearm was operable" and "loaded with a clip," it still maintained that Nall could have used the "additional ammunition" in furtherance of the trafficking "to protect himself and the stash." (*Id.* at 32:14-17). Nall, on the other hand, reiterates that he was not charged with these items; they were found alongside the loaded gun (which is sufficient to prove the Government's point); and, because the Government dismissed Count III, this evidence is irrelevant and cumulative. (*Id.* at 31:5-20; 32:18-25).

"All evidentiary questions begin with Rule 402, which contains the general principle that '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not.'" *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (quoting Fed. R. Evid. 402). "Rule 401 defines relevant evidence as

that which is both *probative* (having 'any tendency to make a fact more or less probable than it would be without the evidence') and *material* (the fact must be 'of consequence in determining the action')." *Id.* (quoting Fed. R. Evid. 401). "Rule 404(b) excludes relevant evidence of other crimes, wrongs, or acts if the purpose is to show a person's propensity to behave in a certain way, but other-act evidence may be admitted for 'another purpose' including, but not limited to, 'proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *Id.* at 855 (quoting Fed. R. Evid. 404(b)). "Finally, even if other-act evidence is relevant without relying on a propensity inference, it may be excluded under Rule 403 . . . if its probative value is 'substantially outweighed by a danger of unfair prejudice.'" *Id.* at 856-57 (cleaned up) (quoting Fed. R. Evid. 403).

These additional components—the converter, silencer, slide and additional ammunition—are admissible. True that the Government already seized a loaded gun in the cube; but "[t]he prosecution is not limited to providing bare-bones proof of the elements of the crime. It is entitled to tell 'a colorful story with descriptive richness.'" *United States v. Johnson*, 89 F.4th 997, 1005 (7th Cir. 2024) (quoting *Old Chief v. United States*, 519 U.S. 172, 187 (1997)). It is permitted to reach the "evidentiary depth" necessary "to tell a continuous story" to satisfy its burden of persuasion. *Id.* (quotes omitted)*.* That Nall was not charged with these additional firearm components and ammunition does not render them inadmissible. Nall is charged under 21 U.S.C. §§ 841(a)(1) & 846 and 18 U.S.C. § 924(c)(1)(A). (Dkt. 1). A charge of conspiracy to distribute narcotics, and possession of a weapon in furtherance of that conspiracy, is not limited to evidence of just the lone charged weapon. *United States v. Duran*, 407 F.3d 828, 838 (7th Cir. 2005) (affirming admission of two uncharged firearms discovered at co-conspirator's house and explaining that "firearms 'are recognized as tools of the drug trade; thus, courts have sustained the

admission of weapons evidence in narcotics cases because the possession of a weapon is often a hallmark of drug trafficking'") (quoting *United States v. Hubbard*, 61 F.3d 1261, 1270 (7th Cir. 1995)); *United States v. Harris*, 536 F.3d 798, 811 (7th Cir. 2008), *overruled on other grounds by United States v. Corner*, 598 F.3d 411 (7th Cir. 2010) (affirming district court's admission of uncharged ammunition over Defendant's objection that he was not charged with the ammunition); *United States v. Jenkins*, 289 F. App'x 129, 131 (7th Cir. 2008) (affirming district court admitting .25 and .45 caliber ammunition found in the search despite Defendant being charged with only possessing a .40 caliber firearm).

A P80 Polymer80 PF940C 9-millimeter handgun is generally understood as a Glock clone and Glock compatible. The converter, silencer, and slide are relevant attachments to the P80 Nall was charged with. No doubt attachments that can transform Nall's ghost gun into a fully automatic, silenced weapon—with extra ammo on hand—increases its lethality. "But identifying features and modifications of firearms, including laser sights and others that make firearms more dangerous, are regularly introduced as evidence[.]" *United States v. Johnson*, 89 F.4th 997, 1007 (7th Cir. 2024). Nor does the fact that they were unattached when discovered strip them of their relevance. The "government should not be required to sanitize its description of the firearm when the details are probative of possession. This is true even when other evidence relevant to possession is available to the government." *Id*. at 1005.

Nall's position also fails to consider that the Government must prove that Nall used the gun in furtherance of the drug conspiracy. "The factors [the Court] use[s] to distinguish between mere possession of a gun and possession in furtherance of a drug crime include the time and circumstances under which the gun is found, the proximity of the gun to the drugs or drug profits, the accessibility of the gun to the defendant, and whether the gun was loaded, among others."

*United States v. Thomas*, 970 F.3d 809, 817 (7th Cir. 2020). The evidence the Government seeks to introduce is relevant on all accounts. The gun components and ammo were stashed with the loaded gun in the drug cache that Nall had access to. *Id.* This is relevant for showing that Nall used the gun in furtherance of his drug conspiracy—for protecting his drug cache, warding off thieves, and protecting himself. *United States v. Castillo*, 406 F.3d 806, 816-820 (7th Cir. 2005) (collecting cases finding guns, ammunition, and attachments stored along with a drug cache relevant to establishing that the gun was used in furtherance of the drug conspiracy); *United States v. Maxwell*, 143 F.4th 844, 859 (7th Cir. 2025) (affirming finding possession of guns in furtherance of drug trafficking because the "guns were found in an apartment filled with distribution quantities of cocaine, stacks of cash, and other paraphernalia associated with drug distribution").

## CONCLUSION

The Court holds that its February 26, 2026, oral ruling addressed whether the Government had the right to seize Nall's phone during the March 2020, stop and search the contents of Nall's phone. Nall's motion to quash and suppress remains denied. The Court denies Nall's oral motion to quash and suppress because the delay between the seizure of the phone and the execution of the search warrant was reasonable. The Court grants the Government's motion *in limine* as to the "Additional Firearm Components and Ammunition." (Dkt. 152 at 22, § VII.C).

_____
Virginia M. Kendall
United States District Judge

Date: June 11, 2026