**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|                                      |     |                                     |
| ------------------------------------ | --- | ----------------------------------- |
|                                      | )   |                                     |
|                                      | )   |                                     |
| UNITED STATES OF AMERICA             | )   | No. 21 CR 286                       |
|                                      | )   |                                     |
| v.                                   | )   | Chief Judge Virginia M. Kendall     |
|                                      | )   |                                     |
| JEFFERY NALL                         | )   |                                     |
|                                      | )   |                                     |
|                                      | )   |                                     |

**OPINION & ORDER**

The Court held its Final Pretrial Conference on July 28, 2026. (Dkt. 191). During the hearing, Nall moved the Court to dismiss the indictment, exclude evidence, or move the trial, asserting that (1) the Government committed misconduct during the Grand Jury proceeding by steering a witness from answering a legal conclusion (whether the Government's plain view search of the Cube was proper); (2) there was no quorum during the Grand Jury proceeding; and (3) the Government's recent productions, including those on July 20, 2026, and July 10, 2026, warrant moving the trial date. For the reasons below, the Court denies all three motions. The trial date stands and will begin on August 3, 2026, at 9:15 a.m.

## I. Grand Jury

Nall's counsel moved to adopt Nall's *pro se* motion during the hearing. (Dkt. 191, Tr. 11:16-12:4). The Court granted Nall's counsel's oral motion. (*Id.*) Nall's counsel also stated that they "intend[ed] to file something" based on Nall's *pro se* motion. (*Id.*) To date, however, they have filed nothing.

In his *pro se* motion, Nall asserts that the Prosecutor interrupted the witness before they could answer a "CRITICAL" question from the Grand Juror and that this amounted to obstruction, suppression, and "belligerently blocking" the Grand Juror from performing their duty. (Dkt. 182 at 1). He further asserts that the Prosecutor put words into the Grand Juror's mouth to hide exculpatory evidence—over objection from other Grand Jurors asserting that the Prosecutor misrepresented the original question asked. (*Id.* at 1-2). He also claims that the Prosecutor further obstructed the proceedings by excusing the witness. (*Id.* at 2).

Nall has failed to show misconduct, much less misconduct warranting suppression of evidence or dismissal of the indictment. During the questioning at issue, the Grand Juror was asking about a legal issue: whether the Government's plain view search was proper or violated Nall's constitutional and privacy rights.

1

**GRAND JUROR:** The point what I'm trying get to is just that, did you have permission from them to come in and take the pictures, because if you took the pictures before you had a warrant, **isn't that violating his rights as far as his privacy in the storage unit**?

**MS. KELLY:** I'm going to interject here and just [because] the question [a]sked him for a **legal conclusion**, which I . . . don't want the witness to give. But I think you can answer the question about I think the question was did you have permission from the owner of the storage facility or their consent to take the pictures through the slats at the top?

(Dkt. 191, Tr. 65:7-23) (emphasis added). First, witnesses are not permitted to testify about the law or legal conclusions. "Witnesses testify about fact, not law. When a legal proposition is relevant to the jury's consideration, the proper procedure is for the judge to instruct the jury on the proposition." *United States v. Johnson*, 223 F.3d 665, 671 (7th Cir. 2000); *Bammerlin v. Navistar Int'l Transportation Corp.*, 30 F.3d 898, 900 (7th Cir. 1994); *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990). As there is no judge during grand jury proceedings, the Prosecutor exercised her discretion to not have the witness discuss a legal conclusion. *See, e.g., United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 430 (1983) (discussing discretion). This is proper.

Second, dismissal of an indictment pretrial based on alleged prosecutorial misconduct is drastic and difficult to prove given the unique independence of grand jury proceedings and the broad immunity prosecutors enjoy. *See, e.g.*, *Burns v. Reed*, 500 U.S. 478, 485 (1991) ("The Court observed that at common law prosecutors were immune from suits for malicious prosecution and for defamation, and that this immunity extended to the knowing use of false testimony before the grand jury and at trial."); *Imbler v. Pachtman*, 424 U.S. 409, 425 (1976) (discussing immunity involving grand jury indictment); *United States v. Williams*, 504 U.S. 36, 48 (1992) ("the grand jury generally operates without the interference of a presiding judge"). A prosecutor directing a lay witness to not testify on the law or legal conclusions—and instead redirecting them to the facts— is proper and not misconduct. *Sells*, 463 U.S. at 430 (one of the roles of the prosecutor during grand jury proceedings is to "advise[] the lay jury on the applicable law"); *see also United States v. Filer*, 762 F. Supp. 3d 730, 756 (N.D. Ill. 2025), *appeal dismissed*, 2025 WL 1952087 (7th Cir. Jan. 19, 2025) ("[E]xplaining the law is within the field of play" for prosecutors "because the grand jury needs to understand what it is hearing. Again, the prosecutors are the legal advisors to the grand jury. And as the legal advisors, the prosecutors inform the jurors about the relevant law and explain how it applies – or does not apply – to the available evidence.") (cleaned up).

Moreover, while Nall complains that the Prosecutor's conduct blocked the disclosure of exculpatory evidence, Nall never had a right to that disclosure in the first place. Never "has the suspect under investigation by the grand jury ever been thought to have . . . exculpatory evidence presented;" indeed, "[i]mposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system." *Williams*, 504 U.S. at 52; *see also Katz-Crank v. Haskett*, 2014 WL 1324283, at *7 (S.D. Ind. Mar. 31, 2014), *aff'd*, 843 F.3d

641 (7th Cir. 2016) ("Because the grand jury is an accusatory body rather than an adjudicatory body, the government is not required to disclose even the existence of exculpatory evidence to the grand jury, or to provide instructions about material facts or legal terms."); *United States v. Simon*, 2010 WL 3980310, at *11 (N.D. Ind. Oct. 8, 2010) ("The government isn't required to . . . provide instructions about material facts or legal terms.").

Third, "a court 'may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants.'" *United States v. Warner*, 498 F.3d 666, 702 (7th Cir. 2007) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988)). Nall has identified no prejudice. After the Prosecutor excused the witness, she allowed the Grand Jurors to keep asking questions until they had none left; she explained that they obtained the photos prior to the search warrant under the plain view doctrine; and the Government presented all of this evidence to a judge to secure a search warrant—which the judge granted—to search inside of the Cube:

> **GRAND JUROR:** But . . . the pictures were taken **before** all of the authorization was given, at least that's what I'm getting at.
>
> **MS. COLEMAN:** . . . I'm going to answer from a legal perspective that it was in **plain view** because it was open and we never physically entered a key to go into that storage . . . facility. So that's a distinction. But that should not be something that should be considered by the Grand Jury because again, that is a **suppression issue**. That information -- as an officer of the Court, what I am telling you is the fact that those pictures were taken before -- and was disclosed in the **affidavit** that we had to **submit to a judge** in order to get authorization to actually enter that storage facility. **And based on that disclosure, a judge determined that there were legal grounds to authorize law enforcement to enter that storage facility**.

(G.J., Tr. 75:7-76:4) (emphasis added). Moreover, the evidence leading the Government to the storage unit was sufficient for them to make the plain view search in the first instance. (*Id.* at 1-64) (discussing ample evidence leading up to the search). If that were not all, Nall does not confront why the Court should now suppress all evidence related to the Cube when Judge Gettleman already ruled that the Government's seizure was proper for independent reasons after Nall moved to suppress the evidence from the storage facility. (Dkt. 143 at 1-7). Because Nall failed to show prejudice sufficient to dismiss the complaint or suppress the evidence retrieved from the Cube, Nall's motion is denied. *Warner*, 498 F.3d at 702.

## II.    Quorum

Nall's counsel briefly mentioned that she had concerns about a quorum. (Dkt. 191, Tr. 12:22-13:12). Counsel provided no evidence and, while claiming to have a motion ready to file, has not filed a motion on this issue. (*Id.* at 11:22-12:4). Here is all that was said on the quorum issue during the Grand Jury proceeding:

> **GRAND JUROR:** Erin, sorry. How many do we
> **GRAND JURY SECRETARY:** Do we still have a quorum?

3

> **GRAND JUROR:** Yes, there's still 18. There's at least
> **SIR FOREPERSON:** Well, no. We're at 17.
> **GRAND JUROR:** Okay.

(G.J., Tr. 54:9-16). Seventeen is a quorum. "The only numerical limitations in the Rule appear in 6(a), (f) and (g). Rule 6(a) states in part: 'The grand jury shall consist of not less than 16 nor more than 23 members.'" *United States v. Lang*, 644 F.2d 1232, 1235 (7th Cir. 1981) (quoting Fed. R. Cim. P. 6(a)); *see Filer*, 762 F. Supp. 3d at 763 ("A grand jury has 23 grand jurors. And, unlike a petit jury, a grand jury does not need to be unanimous. Only 16 of the 23 grand jurors must be present to indict."); S. Brenner & L. Shaw, Federal Grand Jury: A Guide To Law And Practice, Voting on proposed indictment: quorum, 1 Fed. Grand Jury § 5:17 (2d ed.) ("Federal courts have inferred a quorum requirement from Rule 6(a)(1)'s statement that a grand jury must have 16 to 23 members, and the court must order that enough legally qualified persons be summoned to meet this requirement.") (quotes omitted). There is no evidence that there was not a quorum. Nall's motion is denied. *Id.*

### III. Delay

Nall's motions regarding the Grand Jury are untimely and he failed to show good cause for his delay. The catalyst for these issues was Nall's *pro se* motion that he filed on June 23, 2026. (Dkt. 182). The Court denied it the next day. (Dkt. 183). The Court Ordered that "[i]f Counsel wishes to adopt the issue presented by their client, they shall file a motion on or before 6/30/2026." (*Id.*) Counsel took no action. Instead, counsel sought to bring up a newly filed similar motion regarding the grand jury on the eve of trial. (Dkt. 191). During the hearing, Nall's counsel blamed the delay on their busy trial schedule, the weather, and not being able to download Nall's *pro se* motion. (Dkt. 191, Tr. 11:15-15:11). The Court has already ruled that Nall's counsel's trial schedule—which the Court has gone out of its way to accommodate—"is not good cause to move the trial date." (Dkt. 190 at 4) (citing *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1030-31 (7th Cir. 1998)). While the weather was certainly bad on July 28, 2026, counsel has been on notice of these issues for far longer than that storm lasted. Nall's counsel admits as much by further blaming the delay on her inability to download Nall's motion before the Court sealed it. (Dkt. 191, Tr. 15:2-11). That representation disregards that Nall's counsel requested the motion from the Court and the Court provided it to Nall's counsel on July 1, 2026. In other words, Nall's counsel had 28 days to raise these issues with the Court but took no action. That is not good cause; that is inexcusable delay.

### IV. Productions

On July 20, 2026, Nall's counsel moved to reset the trial. (Dkt. 189). The Court addressed this motion in its July 27, 2026, Order. (Dkt. 190 at 4-5). The Court stated, however, that it "will address the 'late receipt of discovery materials' at the final pretrial conference tomorrow." (*Id.* at 4) (quoting Dkt. 189 at 1). In Nall's motion, counsel noted that the Government's last production was on July 10, 2026, and during the hearing she added that the Government made another production, this one on July 20, 2026. (Dkt. 191, Tr. 1:20-23). The Court asked counsel repeatedly what the latest production was, why counsel believed it was new, and why it warranted moving the trial. (*Id.* at 1:15-19; 2:18-20; 8:3-8; 8:13-16). Despite the Government producing its latest production on July 20, and the hearing occurring on July 28, Nall's counsel apparently never reviewed the documents that she now implores necessitates kicking the trial. Nall's counsel stated

that "I am assuming that [its] all new at this point." (*Id.* at 3:8-9). Relying solely on an index of the production, Nall's counsel stated that she "can't tell what each individual thing is and whether it has been previously produced or not." (*Id.* at 8:11-12). Moreover, despite claiming that the Government's productions required the Court to move the trial date, Nall's counsel was unprepared to discuss a single document from these productions or offer a single reason why they warranted moving the trial date. Defense counsel's position amounted to no more than "I don't know." (*Id.* at 8:17-21) ("So my answer is just I don't know. I don't know what's been previously produced and what hasn't. I am not able to answer that question with any sort of specificity about what has been previously produced and what's new."). The one thing Nall's counsel did admit was that the indexes contained "quite a few entries that are marked as 3500 material[.]" (*Id.* at 3:1-2). The Court ordered the Government to produce the indexes Nall was relying on. (*Id.* at 10:12-23).

The Court has reviewed the indexes. Each index lists common metadata fields including "BEGDOC," "DocDescription," "BatesNumber," and "Date Produced." The Government provided columns showing which documents were duplicative. The BEGDOC field lists documents starting with either "21CR286" or "3500." The Court understands the latter to refer to 3500 material. (*See id.*; *see also id.* at 3:12-8:2). In total, there are 452 entries in the July 10 production and 743 entries in the July 20 production. When filtering for duplicates and nonresponsive information (blank files, signature page images, etc.) the July 10 production has approximately 276 documents and the July 20 production has approximately 488 documents.

The Court considers "several factors to determine whether a further continuance is justified: 1) the amount of time available for preparation; 2) the likelihood of prejudice from denial of the continuance; 3) the defendant's role in shortening the effective preparation time; 4) the degree of complexity of the case; 5) the availability of discovery from the prosecution; 6) the likelihood a continuance would have satisfied the movant's needs; and 7) the inconvenience and burden to the district court and its pending case load." *United States v. Miller*, 327 F.3d 598, 601 (7th Cir. 2003); *United States v. Farr*, 297 F.3d 651, 655 (7th Cir. 2002); *United States v. Schwensow*, 151 F.3d 650, 656 (7th Cir. 1998). "These factors deserve varying weight and can best be judged by the district court at the time the defendant requests the continuance." *Id.* "Rule 16 requires the government to disclose documents and papers within its 'possession, custody, or control' that are material to preparing the defense or that the government intends to use in its case-in-chief at trial. If the government fails to comply with Rule 16, the court can order discovery or 'enter any other order that is just under the circumstances.'" *United States v. Giannini*, 104 F.4th 667, 671 (7th Cir. 2024) (quoting Fed R. Crim. P. 16(d)(2)).

Counsel's sole argument is that the productions were untimely. They fail to raise a single other reason warranting moving the trial. (Dkt. 189 at 2). They cite no case law. (*Id.*) While counsel could have shown how the late receipt of specific documents hampered their client's case, they did not. (*Id.*)  They also could have shown how a specific document (or series of documents) are relevant to a defense and why this late production undermined their ability to make that defense. (*Id.*) They again did not. (*Id.*) They also failed to identify any documents under *Brady v. Maryland*, 373 U.S. 83 (1963) or *Giglio v. United States*, 405 U.S. 150 (1972). *See United States v. McPartlin*, 595 F.2d 1321, 1345 (7th Cir. 1979) (discussing compliance with *Brady* material via untimely produced documents).

Against that backdrop, the Court looks solely at the number of documents and the time they were produced. The July 10 production had about 276 responsive documents. Of those 276

5

documents, however, 98.6% of them (272) begin with 3500 to denote 3500 material. The Government of course has no duty to disclose 3500 material before trial. Indeed, under "the express terms of 18 U.S.C. s 3500, the government [is] not . . . required to deliver any 3500 material to defense counsel until the witness to whom the material pertained had completed his testimony on direct examination." *United States v. Williams*, 536 F.2d 1202, 1204 (7th Cir. 1976); *United States v. Calderin*, 67 F.3d 301 (7th Cir. 1995) ("According to the Jencks Act, 18 U.S.C. § 3500, the government's obligation to produce documents relating to the testimony of its witnesses arises only upon completion of its direct examination of those witnesses.").

In other words, Nall claims that having to review 4 documents over twenty-four days is unduly prejudicial. Even if the entirety of the July 10 production was not 3500, the Court has already ruled that the July 10 production was not untimely and Nall has still offered "no basis—not a single description of a single file—that would support his position that he cannot review these files in time for the trial." (Dkt. 190 at 4); *United States v. Crowder*, 588 F.3d 929, 937 (7th Cir. 2009) (affirming denial of continuance and noting that the district court denied "the motion for a continuance based largely on Crowder's counsel's unwillingness to state with any amount of specificity the prejudice that might result to his client absent a continuance. . . . Given Crowder's counsel's cryptic discussion of the prejudice that would befall his client absent a continuance.").

Turning to the July 20, 2026, production. After excluding duplicates, nonresponsive documents, and 3500 material, all that remains are about 80 documents. *Williams*, 536 F.2d at 1204. It is not prejudicial to require trial attorneys to review 80 documents in two weeks. Many of these appear to be "BMW Records" from a government subpoena of Nall's car as well as images of evidence—which of course do not take terribly long to look at. Even if this were not the case and Nall was forced to review 488 documents in two weeks, that too is not overly prejudicial. Again, drilling down into the document descriptions, dozens of these are simple items like single-page photographs, toll receipts, and various emails.

Taking stock of the meager productions weeks before trial, the relevant factors here favor no continuance. First, Nall has had ample time available for trial. Indeed, during the hearing, Nall's counsel's admitted that "we were ready to go in May." (Dkt. 191, Tr. 33:5-6). If he were ready to go in May, surely receiving about 84 non-3500 material 2 to 3 weeks before trial would not derail his case. The likelihood of prejudice is low. Again, the Government had no duty to produce any 3500 material early, that they did only benefits Nall. Reviewing 84 non-3500 documents 2 to 3 weeks before trial is far from prejudicial, especially when Nall failed to show that any document the Government produced here is materially different from the Government's prior productions over the last five years of this case. *See, e.g.*, *United States v. Isaacs*, 593 F.3d 517, 525 (7th Cir. 2010) ("Notably, Isaacs has failed to make a showing that there were, in fact, any material differences between the two sets of CDs. Therefore, the government's disclosure of the new set of CDs three days before trial did not nullify Isaacs's trial preparation because he had at least fifteen months to review the underlying data[.]"); *United States v. Marshall*, 132 F.3d 63, 70 (D.C. Cir. 1998), *as amended* (Mar. 6, 1998) (finding four days sufficient time for defense to review evidence produced after trial started); *USA v. Turner*, 2007 WL 9758027, at *1 (N.D. Ill. Aug. 1, 2007) ("Turner also seeks the pre-trial production of Jencks Act material. The Government agrees to produce all such information two weeks before trial, which is a reasonable amount of time to enable Turner to prepare for trial. Therefore, we deny the motion as moot."); *United States v. Colon*, 1998 WL 214714, at *5 (N.D. Ill. Apr. 21, 1998) (taking no issue with production of "Jencks Act material two weeks prior to trial"). In fact, Nall's primary complaint appears to be about the

3500-material. (Dkt. 189 at 2) ("the Government has produced a substantial amount of 3500 material in the past few weeks"); (Dkt. 191, Tr. 3:1-2) (noting that there are "quite a few entries that are marked as 3500 material[.]"). If so, this is "frivolous." *Williams*, 536 F.2d at 1204. "In the first place, because of the express terms of 18 U.S.C. s 3500, the government could not have been required to deliver any 3500 material to defense counsel until the witness to whom the material pertained had completed his testimony on direct examination. The government's entirely voluntary disclosure of the material the evening before trial gave defendants no rights they would not otherwise have had." *Id.*

Next, this is not an overly complex case; it is a routine drug trafficking case. *Miller*, 327 F.3d at 601. Nall has presented no evidence or argument to the contrary. (*See* Dkt. 189). Nall likewise offers no basis for the Court to find that a continuance would satisfy his needs. (*Id.*) Indeed, had Nall come into the Final Pretrial Conference and informed the Court that there were certain documents untimely produced that were massive, complex, or upending his case, that would merit further attention. He did nothing of the sort. Lastly, the burden and inconvenience here are high. *Miller*, 327 F.3d at 601. This is a 2021 case. The Court has moved its schedule to accommodate Nall to see ensure that he gets a trial after five years of scheduling changes; that day has come. The Court's trial schedule is full for the next four months. Simply put, to succeed on the relief sought, Nall was required to carry a heavy burden, he wholly failed to do so. Thus, for no prejudice established, the Court denies Nall's motion and holds the trial date firm for August 3, 2026, at 9:15 a.m. *United States v. Warren*, 454 F.3d 752, 760 (7th Cir. 2006) (Defendant's "inability to establish prejudice dooms his claim"); *United States v. Giannini*, 104 F.4th 667, 671 (7th Cir. 2024) ("The late disclosure resulted in little to no prejudice to" Defendant). Finally, although the Court recently took over this matter for a colleague, the docket clearly reflects that the many years of delay are in significant part due to the revolving door of defense attorneys who have been provided to Defendant who have later been granted the opportunity to withdraw, leading to the only conclusion that a significant portion of the delay is apparently due to Defendant's own actions in not being able to work with previous counsel.

## V.    Courtroom Evidence

The Government seeks to bring drug and gun evidence into the Court. (Dkt. 194). The Court grants the Government's motion subject to the Government strictly following all federal and Courtroom rules. All such evidence must remain in the sole custody of the Government's agent the entire time during Court, be removed each day, and pose no threat to anyone present.

Virginia M. Kendall
United States District Judge

Date: July 30, 2026

7